### AFFIDAVIT OF SPECIAL AGENT LISA A. CRANDALL IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, LISA A. CRANDALL, having been sworn, state:

#### *INTRODUCTION AND AGENT BACKGROUND*

1. I have been employed as a Special Agent with the Federal Bureau of Investigations ("FBI") since June 2010. I am currently assigned to the Lakeville Resident Agency within the Boston Division of the FBI. My current responsibilities include the investigation of various violations of federal law, particularly, the investigation of federal crimes involving the sexual exploitation of children utilizing computer telecommunications. I am familiar with various violations of federal law pertaining to the sexual exploitation of children, including, but not limited to, violations of 18 U.S.C. § 2251(a).

2. I am currently investigating Domenique DeQuon Hines, year of birth 1997, for Production/Attempted Production of Child Pornography, in violation of 18 U.S.C. § 2251(a).

3. This affidavit is being submitted in support of an application for warrants, under 18 U.S.C. § 2703(a) and Rule 41 of the Federal Rules of Criminal Procedure, to search and seize the Instagram accounts identified by the usernames DeQuon Hines, identification number 41956595764; Minor A, identification number 16681580531; and Daddy n Kitten, identification number 43873345079, Instagram and other data associated with this account ("the Name Instagram accounts"), as described in Attachment A. There is probable cause to believe that the above referenced Instagram accounts contains fruits, evidence, and instrumentalities of the crimes listed in paragraph 2, as described in Attachment B.

4. The Name Instagram accounts and relevant data are maintained by Facebook, Inc., which, government databases indicate, accepts service of process at 1 Hacker Way, Menlo Park, CA 94025 and via the law enforcement portal at www.facebook.com/records.

5. The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other agents and witnesses. This affidavit includes only those facts I believe are necessary to establish probable cause and does not include all of the facts uncovered during the investigation.

## *INSTAGRAM*

6. Instagram is a mobile photo and video sharing and social networking application (or "app") that runs primarily on Apple and Android mobile devices. Instagram accesses the camera on the user's device and provides an interface through which users can take pictures and videos, apply digital filters to them, and share them.

7. Instagram was founded in 2010 and experienced rapid growth. In 2012, it was purchased by Facebook, Inc., and is now a wholly-owned subsidiary of Facebook, Inc. Instagram can be accessed at http://www.instagram.com, but is designed for use and viewing on a mobile device. In 2014, Instagram announced that it had reached 200 million users and had exceeded 20 billion photos shared on the Instagram platform.

8. Instagram is a free application and can be obtained at the Apple App Store and Google Play. When a user opens an Instagram account, he or she is asked to provide information for their user profile: their first and last name, a picture that will be associated with their profile, and an email address and phone number. The user must also create an Instagram username (which must be unique and contain no spaces) and a password. Instagram may also ask the user to answer security questions for password retrieval. Instagram then assigns a user identification number to each account.

9. Instagram is designed primarily to allow users to upload photographs from mobile devices to the web using the mobile Instagram application. Instagram users may interact with

other Instagram users by "following" other users, which permits them to easily monitor the posts of these users. Instagram users can also choose to "unfollow" another user if they no longer wish to receive updates on posts by that user.

10. Instagram has a feature that allow users to give positive feedback regarding the photographs of other users by "liking" those photographs. Instagram users can also post textual comments about uploaded photographs. Comments are linked to the username of the author of those comments and to the username of the account from which the commented-on photograph was published.

11. Instagram users can select different levels of privacy for the communications and information associated with their Instagram accounts. By adjusting these privacy settings, an Instagram user can make information available only to himself or herself, to particular Instagram users, or to anyone with access to the Internet. For instance, rather than publishing a photograph to be viewable by any Instagram user, or just the Instagram users that "follow" them, an Instagram user can also can share a photograph directly and exclusively with another Instagram user that is following them, and add a caption, without the photograph being visible to all their followers. Instagram users can also chose to share their Instagram photographs with people who are not Instagram users through a variety of means, including by linking another social media profile that they control to their Instagram account so that, for example, all photographs taken on Instagram are also displayed on their Facebook profile, and are viewable to anyone that has the ability to access that profile. Instagram accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Instagram.

12. Instagram allows users to "tag" other Instagram users in a posted photo by identifying the tagged user by Instagram user name. When an Instagram user is tagged in another

user's photograph, that user receives a notification of the tag and a link to see the tagged photo. For Instagram's purposes, the photos associated with a user's account will include all photos uploaded by that user that have not been deleted, as well as all photos uploaded by any user that have that user tagged in them. If an Instagram user does not want to interact with another user on Instagram, the first user can "block" the second user from seeing his or her account. Instagram users can also hide photos in which they are tagged from appearing on their own profiles, as well as untag themselves from photos.

13. Instagram has an "explore" search function that enables its users to search Instagram for usernames, photographs fitting specified descriptions, and comments, among other things. Instagram users use the "#" symbol (referred to as a "hashtag") to search for particular topics and to mark content in order to be searchable by that topic.

14. Instagram has a messaging feature called "Instagram Direct" that lets its subscribers send messages to one or more people. Subscribers can send photos or videos, posts, user profiles, text, hashtags, and locations. If the subscriber has not deleted these messages (or sent as so-called "disappearing" photographs or videos, Instagram retains them.

15. Instagram generally retains Internet Protocol ("IP") logs for its users. These logs may contain information about the actions taken by the user on Instagram, including information about the type of action, the date and time of the action, and the IP address associated with the action. For example, if a user views another user's Instagram profile, that first user's IP log would reflect the fact that the user viewed that particular profile, and would show when and from what IP address the user did so. This information may allow for the identification of a particular mobile device or computer that was used to access Instagram by a particular user.

16. Social networking providers like Instagram typically retain additional information

about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Instagram users may communicate directly with Instagram about issues relating to their accounts, such as technical problems or complaints from other users. Social networking providers like Instagram typically retain records about such communications, including records of contacts between the user and the provider's support service members, as well as records of any actions taken by the provider or user as a result of the communications.

### *PROBABLE CAUSE THAT THE NAMED INSTAGRAM ACCOUNTS CONTAIN FRUITS, EVIDENCE, OR INSTRUMENTALITIES OF A CRIME*

17. The Instagram accounts outlined herein may contain fruits, evidence, or instrumentalities of a violation of 18 U.S.C. § 2251(a). Specifically, on Friday November 6, 2020, a local police department ("PD") notified FBI Boston, Lakeville Resident Agency, that it had received information from parents of a fourteen-year-old minor female (hereinafter, "Minor A"). The parents believed their minor daughter had been communicating via text messages with a 23-year-old male party and the two exchanged text messages that contained sexually explicit photos and sexually explicit conversations. The parents provided the phone number used by the male party as (xxx) xxx-3688. The parents of Minor A came to the police department and provided police with a USB drive containing messages exchanged between Minor A and the adult male, which the parents had retrieved from their family iCloud account.[1] Based on a review of the messages, the PD did not believe that the adult male resided in its jurisdiction or within the Commonwealth of Massachusetts and contacted the FBI.

---

[1] iCloud is a cloud storage and cloud computing service offered by Apple Inc.

18. Subsequent investigation revealed that Hines and Minor A initially met and conversed on Instagram. Thereafter, Hines asked for Minor A's telephone number and the two began communicating via iMessages. It also appears that Hines created a joint Instagram account for Hines and Minor A and that the two attempted to communicate at other times via Instagram. I have reviewed the iMessages provided by Minor A's parents, which begin on October 28, 2020, at approximately 10:20am and end on November 6, 2020. A review of the iMessages revealed that Hines provided his month and date of birth to Minor A and informed Minor A that he is 23 years old and Minor A ultimately confirmed that she is 14 years old. Minor A told Hines that she was 14 years old prior to Hines requesting any sexual images from Minor A. Via iMessage, Hines sent a profile picture of himself to Minor A and Minor A sent a profile picture of herself to Hines.[2] Thereafter, at Hines' request, Minor A took sexually explicit photos of herself, including a close-up photograph of her pubescent vagina with the legs spread apart, and the bottom portion of a sweatshirt, located above the vagina, is observed in the picture,[3] and sent them to Hines, by iMessaging the photos to phone number (xxx) xxx-3688.[4] At Hines' request, Minor A also took other naked photos and videos of herself and sent them to Hines at that same phone number.

---

[2] I have reviewed three photographs that Hines sent to Minor A via iMessages and believe that they depict the same individual depicted in the photograph maintained by the Illinois Sexual Offender Registry for Hines.

[3] To avoid unnecessary in-person interaction given the health concerns posed by the current COVID-19 pandemic, I am not providing a copy of this image to the Court. I am aware that the "preferred practice" in the First Circuit is that a Magistrate Judge view an image that agents believe constitutes child pornography by virtue of its depiction of the lascivious exhibition of a child's genitals. *United States v. Brunette*, 256 F.3d 14, 18-19 (1st Cir. 2001). Here, however, the description offered "conveys to the Magistrate Judge more than [my] mere opinion that the images constitute child pornography." *United States v. Burdulis*, 753 F. 3d 255, 261 (1st Cir. 2014) (distinguishing Brunette). Additionally, 14 year old Minor A has confirmed that she is the individual depicted in the images that depict her genitals. *See United States v. Syphers*, 426 F.3d 461, 467 (1st Cir. 2005) ("The best practice is for an applicant seeking a warrant based on images of alleged child pornography is for an applicant to append the images *or provide a sufficiently specific description of the images* to enable the magistrate judge to determine independently whether they probably depict real children.") (emphasis added). Therefore, the Court need not view the image described herein to find that it depicts child pornography.

[4] During an interview on November 23, 2020, Minor A identified the photo of herself and confirmed that she took and sent it to Hines at his request.

19. In connection with this investigation, I have also reviewed the iMessages exchanged between Minor A and Hines that were contained within Minor A's cell phone. In one iMessage, dated October 31, 2020 at approximately 7:47:29 pm, Hines states that they should make a page together. Minor A agrees and then the two discuss who should make it. After some back and forth at 8:04:26pm, Hines states, "okay the email address is ▮▮▮▮▮▮ ▮▮▮▮▮▮".[5] At 8:10:41pm Hines tells Minor A to post pictures and make a profile picture and make a bio.

20. A review of the iMessages between Minor A and Hines as well as a review of the Instagram app on Minor A's phone confirms that Hines created a joint Instagram account for Hines and Minor A. Additionally, Hines and Minor A attempted to communicate at other times on Instagram after October 28, 2020.

21. Within the chats section of the Instagram application on Minor A's phone, there were two chats located with DeQuon Hines, user number 41956595764. One of the chats was between Instagram user DeQuon Hines, user number 41956595764, and Minor A, user number 16681580531.[6] The other chat was between DeQuon Hines, user number 41956595764, and Daddy n Kitten, user number 43873345079. According to a review of Minor A's iPhone, the first Instagram chat started on or before October 28, 2020. Within the chat, Instagram user DeQuon Hines, user number 419565695764, asks for Minor A's number. Lonely.kitten162, user number 16681580531 provides his/her number as (xxx) xxx-7772.

22. The second chat was between Instagram user DeQuon Hines, user number

---

[5] Based on my training and experience I believe this is the email address and password.
[6] During the interview of Minor A on November 23, 2020, Minor A confirmed her Instagram account that she used to talk with Hines was Minor A ▮▮▮▮.

41956595764, and Daddy n Kitten,[7] user number 43873345079. The chat was initiated on or before November 4, 2020. No text was visible within the chat.

23. An interview of Minor A was conducted on November 23, 2020. During the interview, Minor A identified Hines by his name, DeQuon Hines, and also identified Hines' number as being saved on her iPhone under the contact name "Daddy." Minor A also related that at Hines request, Minor A took and sent Hines sexually explicit and naked images or videos of herself, including a photo of a close up of her vagina. Minor A also related that she and Hines initially met on Instagram. She further confirmed that after exchanging phone numbers, she began to communicate with Hines via iMessage.

24. During the forensic interview conducted of Minor A on November 23, 2020, Minor A stated that she had met DeQuon Hines on Instagram prior to communicating via iMessage. Minor A also stated that the two had created an Instagram Account together.

25. Based on the investigation, I believe there is probable cause to establish that Hines initially used the Instagram account DeQuon Hines, user number 41956595764, and made contact with Minor A, who was using Instagram account Minor A, user number 16681580531, prior to transitioning to iMessage communications. Further, based on the investigation, I believe there is probable cause to establish that Hines created a second Instagram account, Daddy n Kitten, 43873345079, and shared the login information with Minor A.

26. The undersigned submits that the Instagram accounts information requested herein may lead to additional relevant information, including subscriber information, confirming the IP address used to create the accounts and IP addresses used to log onto the accounts, private

---

[7] There is a heart emoji after the word "Daddy" and before the letter "n" as well as after the letter "n" and immediately preceding the letter "K".

messages to and from the account holders, photographs shared with and posted by the account holders, and any comments or captions that might indicate the person's location and identities.

27. On 11/17/2020, a request was submitted under 18 U.S.C. § 2703(f) via the Facebook law enforcement portal that the company preserve all records associated with the following Instagram accounts: Instagram User DeQuon Hines, identification number 41956595764; Instagram User Minor A, identification number 6681580531; and Daddy n Kitten, identification number 43873345079   Name. Facebook has indicated that it will preserve these records through 4/16/2021.

28. From my training and experience, I am aware that companies that host social-networking accounts, and Instagram in particular, generally maintain records of their subscribers' online activities and private communications unless the user deletes these communications.

## *LEGAL AUTHORITY*

29. The government may obtain both electronic communications and subscriber information by obtaining a search warrant. 18 U.S.C. §§ 2703(a), 2703(c)(1)(A).

30. Any court with jurisdiction over the offense under investigation may issue a search warrant under 18 U.S.C. § 2703(a), regardless of the location of the Internet company whose information will be searched. 18 U.S.C. § 2703(b)(1)(A). Furthermore, unlike other search warrants, § 2703 warrants do not require an officer to be present for service or execution of the search warrant. 18 U.S.C. § 2703(g).

31. If the government obtains a search warrant, there is no requirement that either the government or the provider give notice to the subscriber. 18 U.S.C. §§ 2703(b)(1)(A), 2703(c)(3).

## *REQUEST TO SEAL AND PRECLUDE NOTICE TO THE SUBSCRIBER*

32. I request that this application, the warrant, the order, and any related papers be

sealed by the Court until such time as the Court directs otherwise, except that the United States may later produce copies of the search warrant and related documents to the defense during discovery in any criminal case.

33. I further request that, pursuant to the preclusion-of-notice provisions of 18 U.S.C. § 2705(b), the Court order Facebook/Instagram not to notify any person (including the subscriber to whom the materials relate) of the existence of this application or the Court's Order for a period of one year, or until notified by the government within thirty days of the conclusion of the investigation, whichever is earlier, unless the Court extends such period under 18 U.S.C. § 2705(b). Non-disclosure is appropriate in this case because the Court's Order relates to an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation, and its disclosure may alert the targets to the existence of the investigation. There is accordingly reason to believe that notification of the existence of the Order will seriously jeopardize the investigation including by giving the target an opportunity to destroy or tamper with evidence, intimidate potential witnesses, or endanger the life or physical safety of an individual. See 18 U.S.C. § 2705(b). Moreover, some of the evidence in this investigation is stored electronically. If alerted to the existence of the Order, the target could destroy that evidence, including information saved to its personal computers, on other electronic media, or in social media accounts.

### *FOURTEEN-DAY RULE FOR EXECUTION OF THE WARRANT*

34. Federal Rule of Criminal Procedure 41(e)(2)(A),(B) directs the United States to execute a search warrant for electronic evidence within 14 days of the warrant's issuance. If the Court issues this warrant, the United States will execute it not by entering the premises of Facebook/Instagram, as with a conventional warrant, but rather by serving a copy of the warrant on the companies and awaiting their production of the requested data. This practice is approved

in 18 U.S.C. § 2703(g), and it is generally a prudent one because it minimizes the government's intrusion onto Internet companies' physical premises and the resulting disruption of their business practices.

35. Based on the training and experience of myself and other law enforcement, I understand that e-mail and social media providers sometimes produce data in response to a search warrant outside the 14-day (formerly 10-day) period set forth in Rule 41 for execution of a warrant. I also understand that electronic communication companies sometimes produce data that was created or received after this 14-day deadline ("late-created data"). The United States does not ask for this extra data or participate in its production.

36. Should Facebook/Instagram produce late-created data in response to this warrant, law enforcement personnel will seek to avoid reviewing any late-created data that was created by or received by the account-holder(s) absent a follow-up warrant. However, I request permission to view all late-created data that was created by Facebook/Instagram, including subscriber, IP address, logging, and other transactional data, without a further order of the Court. This information could also be obtained by grand jury subpoena or an order under 18 U.S.C. § 2703(d), neither of which contains a 14-day time limit.

37. For these reasons, I request that the Court approve the procedures in the respective Attachments B, which set forth these limitations.

## CONCLUSION

38. Based on the information described above, I have probable cause to believe that Domenique DeQuon Hines has committed Production/Attempted Production of Child Pornography in violation of 18 U.S.C. § 2251(a).

39. Based on the information described above, there is probable cause to believe that the Name Instagram User DeQuon Hines, identification number 41956595764; Minor A, identification number 16681580531; and Daddy n Kitten, identification number 43873345079, (Instagram accounts (as described in Attachment A) contains fruits, evidence, and instrumentalities of these crimes (as described in Attachment B).

40. The procedures for copying and reviewing the relevant records are set out in Attachment B.

Sworn to under the pains and penalties of perjury

*Lisa A. Crandall*
LISA A. CRANDALL
Federal Bureau of Investigations

Subscribed and sworn to me telephonically in accordance with Fed. R. Crim. P. 4.1 on December 1, 2020. 6:25 p.m.

Dated: 12/1/2020

HON. DAVID H. HENNESSY
United States Magistrate Judge

## ATTACHMENT A

The premises to be searched and seized are (1) the Instagram account identified by Unique Identifiers as Instagram User DeQuon Hines, identification number 41956595764 (2) other user-generated data stored with this account, and (3) associated subscriber, transactional, and user connection information associated with the account, as described further in Attachment B. This information is maintained by Facebook, Inc., which accepts service of process at 1 Hacker Way, Menlo Park, CA 94025 and via the law enforcement portal at www.facebook.com/records.

## ATTACHMENT B

I.  **Search Procedure**

A.  Within fourteen days of the search warrant's issue, the warrant will be served on Facebook personnel, who will identify the accounts and files to be searched, as described in Section II below.

B.  The company will then create an exact electronic duplicate of these accounts and files ("the account duplicate").

C.  The company will provide the account duplicate to law enforcement personnel.

D.  Law enforcement personnel will then search the account duplicate for the records and data to be seized, which are described in Section III below.

E.  Law enforcement personnel may review the account duplicate, even if the company produced it after fourteen days from the warrant's issue, subject to the following limitations. If the company provided data that was created after fourteen days from the warrant's issue ("late-created data"), law enforcement personnel may view all late-created data that was created by the company, including subscriber, IP address, logging, and other transactional data, without a further order of the Court. Law enforcement personnel will seek to avoid reviewing any late-created data that was created by or received by the account-holder(s), such as e-mail, absent a follow-up warrant.

II.  **Accounts and Files to Be Copied by Company Personnel**

A.  All data files associated with the account associated with Instagram user ID numbers 41956595764, 16681580531, and 43873345079, from September 1, 2020 to present, including any materials preserved on 11/17/2020, when the preservation request was initiated on this account, including:

1. Biographical profile information entered by the user, including not only the subscriber information requested in B.1, below, but also any additional information entered by the user, including any security questions and answers provided and password;

2. Information regarding the user's activities on Instagram, including;

   - Searches conducted by the user
   - Tags applied
   - Any comments made by the user or about the user's content
   - Any text, photos, videos or other user-generated or uploaded content sent via message or private message, including via Instagram Direct.
   - Any "Likes" made by that user on another user's content, and the associated content
   - Privacy settings

3. Photographs and videos uploaded by the user and all comments, public or private messages, or tags associated with that media, and all media uploaded by any user that have the user tagged in them.

4. Information about the user's associates, including;

   - Users that are following the user
   - Users the user is following
   - Any users the user has blocked

5. Information regarding the user's location and movements, including;

   - Metadata showing location information on any photographs or videos uploaded by the user.

B. All subscriber and transactional records for this account and any associated accounts, including any Facebook accounts linked to this account:

1. Names, including;

    - Username
    - Account Name
    - Vanity Name
    - Name Changes
    - URL associated with the account

2. Addresses, including;

    - Addresses
    - Email Addresses (including any removed email addresses);
    - IP Addresses

3. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions, including any device identifiers;

4. Length of service and types of service utilized, including;

    - Account Status History
    - Registration Date
    - Privacy Settings

5. Telephone or instrument numbers;

### III.     Records and Data to be Searched and Seized by Law Enforcement Personnel

A. Evidence, fruits, and instrumentalities of Production/Attempted Production of Child Pornography, from September 1, 2020, to present, including records or data relating to:

1. Communications with any other person that relate to child pornography, the sexual exploitation of children, Minor A, or the identity of any child depicted in videos and photographs located in the account;

2. The identity and location of any minor victims, including Minor A;

3. Computer activity in furtherance of activities related to the underlying crime(s);

4. The identity and past or present location of the user(s) of the Named Instagram account;

5. The identity, location, and ownership of any computers used to access the Named Instagram account;

6. Other e-mail or Internet accounts, telephone numbers, social media services, or web or mobile based applications providing Internet access, remote data storage, or communication services for Domenique DeQuon Hines.

B. All of the subscriber, transactional, and logging records described in Section II (B).